**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**James Manuel BANUELOS,**
**Defendant–Appellant.**

**No. 01–50051.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted March 5, 2002.

Filed March 10, 2003.

---

Janice M. Deaton, San Diego, CA, for the defendant-appellant.

Patrick K. O'Toole, United States Attorney (when brief was filed), Carol C. Lam, United States Attorney (when opinion was filed), Todd W. Robinson, Assistant United States Attorney, San Diego, CA, for the plaintiff-appellee.

Before PREGERSON, FISHER and TALLMAN, Circuit Judges.

Opinion by Judge FISHER; Dissent by Judge TALLMAN.

## OPINION

FISHER, Circuit Judge.

■ We are once again confronted with an *Apprendi*-based challenge to a sentence for a federal drug offense. James Manuel Banuelos contends that the district court erred in sentencing him to 120 months in prison for conspiracy to distribute controlled substances, in violation of 21 U.S.C. §§ 846 and 841(a)(1). We agree. It is well settled that, in determining for purposes of sentencing the quantity of drugs for which a conspirator will be held responsible, the district court is required to determine the quantity of drugs the conspirator "reasonably foresaw or which fell within 'the scope' of his particular agreement with the conspirators." *United States v. Petty*, 992 F.2d 887, 890 (9th Cir.1993). We now hold that, where such a finding exposes the conspirator to a higher statutory maximum than he otherwise would face, the finding must be made by the jury, or, in the case of a guilty plea, by the court beyond a reasonable doubt. *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000).

## FACTUAL & PROCEDURAL BACKGROUND

Banuelos was arrested for his involvement with Xclusive Auto Center, a San Diego business that served as a narcotics brokerage house—a hub for drug wholesalers to deliver their products to transportation and distribution organizations. Banuelos acted as a broker who arranged the delivery of shipments of marijuana between wholesale distributors and transportation and distribution organizations.

The government charged Banuelos and 25 other individuals in a multi-count indictment. He ultimately pled guilty to Count Two, which charged him with conspiracy to distribute controlled substances, including marijuana, in violation of 21 U.S.C. §§ 846 and 841(a)(1). Count Two named Banuelos in several overt acts, including the delivery of 100 pounds of marijuana on one occasion, the delivery of 75 pounds of marijuana on another day and the receipt of 300 pounds of marijuana.

At the change of plea hearing, Banuelos agreed that "the government could prove in this case that the total amount of marijuana that is attributable to this conspiracy is 1000 kilograms," but he disputed that the 1000 kilograms should be personally attributed to him for purposes of sentencing. The district court informed Banuelos that the mandatory minimum would be 10 years and that the maximum would be life imprisonment. The court explained that those would be the minimum and maximum sentences "if [the court found] that

[Banuelos was] responsible for the entire amount of drugs that was distributed by the conspirators in this case."

The court identified two issues to be resolved at the sentencing hearing:

Okay. So we are proceeding along the marijuana—deciding how much marijuana the conspiracy was involved in distributing, and then how much of that you should be liable for. So those are two different issues.

Banuelos did not dispute that the conspiracy distributed more than 1000 kilograms of marijuana, and he confirmed that he was waiving his right to have a jury decide that issue. Banuelos did not, however, explicitly waive his right to a jury determination of drug quantity attributable to him.[1] He continued to dispute that he should be held liable for the entire quantity of drugs distributed by the conspiracy, and he maintained that the district court was required to make the finding of drug quantity attributable to him beyond a reasonable doubt. The court disagreed and instead found by clear and convincing evidence that Banuelos was "personally responsible for at least 1000 kilograms of marijuana" and that the quantity distributed by the conspiracy was reasonably foreseeable to him. Based on those findings, the court sentenced Banuelos pursuant to § 841(b)(1)(A), which imposes a mandatory minimum of 10 years in prison and a maximum sentence of life imprisonment for offenses "involving ... 1000 kilograms or more of a mixture or substance containing

---

1. The court's discussion with Banuelos' counsel makes this clear:

    THE COURT: See, there are two issues: What was the amount in the conspiracy, and what was the amount attributable to the defendant? And you're saying your client is willing to waive jury as to the amount of drugs distributed by the conspiracy?

    MS. DEATON: That's correct.

The court reiterated the specifics of the waiver with Banuelos a few minutes later:

    THE COURT: Now, Mr. Banuelos, do [you] understand that you also have the right to a jury trial on the total amount of drugs that this conspiracy is alleged to have distributed. Do you understand that?

    THE DEFENDANT: Yeah, I'm aware of that.

a detectable amount of marijuana." The court sentenced Banuelos to 120 months in prison and five years of supervised release. Had the district court sentenced Banuelos for conspiracy to distribute an unspecified quantity of marijuana, it would have looked to § 841(b)(1)(D), which provides for a maximum sentence of five years in prison and no mandatory minimum.

On appeal, Banuelos claims that the district court employed the wrong burden of proof to determine the quantity of drugs for which he should be held responsible.[2] We reverse and remand for resentencing.

## STANDARD OF REVIEW

■ Whether the district court applied the correct burden of proof in attributing drug quantity to Banuelos and whether the district court properly applied *Apprendi* are questions of law that we review de novo. *United States v. Gill,* 280 F.3d 923, 930 (9th Cir.2002).

## ANALYSIS

### I.

■ In sentencing a defendant convicted of conspiracy to distribute a controlled substance, a district court may not automatically count as relevant conduct the entire quantity of drugs distributed by the conspiracy. *United States v. Garcia–Sanchez,* 189 F.3d 1143, 1147 (9th Cir. 1999). Rather, the court must find the quantity of drugs that either (1) fell within the scope of the defendant's agreement with his coconspirators or (2) was reasonably foreseeable to the defendant. *United States v. Gutierrez–Hernandez,* 94 F.3d 582, 585(9th Cir.1996); *Petty,* 992 F.2d at 890. This rule is well-settled as a matter

of sentencing under the Guidelines, but we have also applied it to sentencing under the statute of offense. *United States v. Becerra,* 992 F.2d 960, 966–67 & n. 2 (9th Cir.1993) (holding that court may not impose statutory mandatory minimum without finding that "a particular defendant had some connection with the larger amount on which the sentencing is based or that he could reasonably foresee that such an amount would be involved in the transactions of which he was guilty"); *see also United States v. Mesa–Farias,* 53 F.3d 258, 260 (9th Cir.1995) (describing *Becerra* as requiring that "sentencing for conspiracy be the same under § 841(b) as under the Sentencing Guidelines"). Thus, in order to sentence Banuelos pursuant to § 841(b)(1)(A)—or any penalty provision tied to a particular type or quantity of drug—the district court was required to find not only that the conspiracy distributed a particular type and quantity of drugs, but also that the type and quantity were either within the scope of Banuelos' agreement with his coconspirators or that the type and quantity were reasonably foreseeable to Banuelos.

■ Banuelos does not dispute that the district court conducted the proper substantive inquiry here, and the record reflects that the district court considered both whether Banuelos himself distributed more than 1000 kilograms of marijuana and whether that amount was reasonably foreseeable. Rather, Banuelos' challenge, which we find meritorious, is based on the district court's choice as to the proper burden of proof.

■ *Apprendi* requires the government to prove beyond a reasonable doubt any

**2.** Banuelos also argues on appeal that the district court erred in sentencing him under 21 U.S.C. § 841(b)(1)(A) because the indictment did not charge drug quantity. We need not reach this issue, because we reverse and remand on the basis of the court's erroneous decision to employ a clear and convincing standard of proof.

fact, other than a prior conviction, that exposes the defendant to a greater punishment than that authorized by the guilty verdict or plea. *Apprendi*, 530 U.S. at 489, 494, 120 S.Ct. 2348. Where a defendant claims the district court violated *Apprendi*, we first determine the statutory maximum punishment authorized by the guilty verdict or plea. If the conviction follows a jury trial, we scrutinize the jury verdict and ascertain the explicit and implicit findings made by the jury. In the case of a guilty plea, the defendant admits guilt beyond a reasonable doubt and it is necessary to examine the substance of the plea to determine the facts to which the defendant has admitted. Here, Banuelos pled guilty to conspiracy to distribute an unspecified amount of marijuana. This crime carries a statutory maximum penalty of five years in prison and at least two years of supervised release. 21 U.S.C. § 841(b)(1)(D).

■ The next step in assessing a claim of *Apprendi* error is to determine whether the court made any findings that exposed the defendant to a greater statutory maximum punishment than that authorized by the plea. Here, the district court made two relevant findings, only one beyond a reasonable doubt. On the basis of Banuelos' own admission, the district court found beyond a reasonable doubt that the conspiracy distributed more than 1000 kilograms of marijuana. However, the district court employed a clear and convincing standard of proof in determining "the quantity of drugs that[Banuelos]

reasonably foresaw would be distributed or that fell within the scope of his own agreement with his co-conspirators." *Becerra*, 992 F.2d at 966. On the basis of those findings, the court sentenced Banuelos pursuant to § 841(b)(1)(A), which carries a maximum sentence of life in prison. Because the district court's findings exposed Banuelos to a higher statutory maximum than he would otherwise face (five years), the court's determination of drug quantity attributable to Banuelos by clear and convincing evidence violated *Apprendi*.[3] *See United States v. Velasco–Heredia*, 319 F.3d 1080, 2003 WL 152767 at *5 (9th Cir.2003) (holding that *Apprendi* error occurred when trial court used preponderance of the evidence standard at sentencing to determine drug quantity attributable to the defendant).

■ We next review the *Apprendi* violation for harmless error. "Although our cases sometime conflate the question of whether an *Apprendi* violation occurred with the question of whether the error requires resentencing, the inquiries are distinct." *United States v. Minore*, 292 F.3d 1109, 1121 n. 10 (9th Cir.2002); *see also Ring v. Arizona*, 536 U.S. 584, 122 S.Ct. 2428, 2439, 153 L.Ed.2d 556 (2002) ("If a State makes an increase in a defendant's *authorized* punishment contingent on a finding of fact, that fact ... must be found by a jury beyond a reasonable doubt." (emphasis added)); *United States v. Antonakeas*, 255 F.3d 714, 728 (9th Cir. 2001) (separating error analysis from prejudice analysis); *United States v. Garcia–*

---

**3.** The court's finding of drug quantity attributable to Banuelos by any standard, without first advising Banuelos that he had a right to jury determination of that fact beyond a reasonable doubt, also violated *Apprendi*. *See United States v. Minore*, 292 F.3d 1109, 1117 (9th Cir.2002) (holding that if drug quantity exposes a defendant to a higher statutory maximum sentence than he would otherwise

receive, it is the functional equivalent of a critical element of the offense for Rule 11 purposes, and therefore the district court must inform the defendant that he is entitled to a jury determination of drug quantity beyond a reasonable doubt before accepting the defendant's plea). Banuelos, however, has not made this *Apprendi* violation the basis of his appeal.

*Guizar*, 234 F.3d 483, 488–89 (9th Cir. 2000) (same); *United States v. Scheele*, 231 F.3d 492, 497 n. 2 (9th Cir.2000) (same). In determining whether the district court's error requires reversal, we focus on the prejudice to Banuelos. Because the court actually imposed a sentence of 10 years— far greater than the permissible five year maximum—the *Apprendi* error was not harmless beyond a reasonable doubt.[4] *United States v. Tighe*, 266 F.3d 1187, 1195 (9th Cir.2001) (reversing for *Apprendi* error because sentence imposed exceeded the applicable statutory maximum based upon the verdict).

■■■ Because Banuelos challenged only his sentence, and not his conviction, we are required to remand the case with instructions to the district court to resentence Banuelos "subject to the maximum sentence supported by the facts found by the [fact-finder] beyond a reasonable doubt." *Nordby*, 225 F.3d at 1062 (explaining that new trial may be ordered to correct sentencing error where defendant challenges both conviction and sentence, but court may not order a retrial of a conviction that the defendant "has accepted as final"); *see also Velasco–Heredia*, 319 F.3d 1080, 2003 WL 152767 at *6 (remanding for resentencing under § 841(b)(1)(D) when drug quantity attributable to the defendant was not proved beyond a reasonable doubt). As discussed above, Banuelos admitted beyond a reasonable doubt that he conspired to distribute an unspecified amount of marijuana. Thus he was properly convicted of the general offense set forth in § 841(a)(1)—the offense charged in the indictment and the only offense for which there was a factual basis for conviction,

---

4. In arguing that the *Apprendi* error in this case was harmless, the dissent maintains that we should look to the record of Banuelos' sentencing proceedings to determine that the evidence supports a finding of drug quantity beyond a reasonable doubt. Not only has the government failed to request that we make such a determination, but as the dissent acknowledges, our decisions in *United States v. Jordan*, 291 F.3d 1091, 1097 (9th Cir.2002), and *United States v. Nordby*, 225 F.3d 1053, 1061 n. 6 (9th Cir.2000), *overruled on other grounds by United States v. Buckland*, 289 F.3d 558, 568 (9th Cir.2002) (en banc), explicitly prohibit us from considering admissions made at sentencing in evaluating an *Apprendi* violation for harmless error. The dissent urges that *Jordan* and *Nordby* do not control our analysis here because the verdicts in those cases resulted from jury trials, whereas Banuelos pled guilty and therefore "the only relevant issue remaining before the district court was to be decided *at sentencing*." However, as we explained above, *see* note 3, *supra*, the very finding of an *Apprendi* violation means that it was improper for the district court to determine drug quantity attributable to Banuelos at sentencing without first informing Banuelos of his right to a jury determination of drug quantity attributable to him beyond a reasonable doubt. *See Minore*, 292

F.3d at 1117. The record reflects that the district court did not so advise Banuelos and that Banuelos did not explicitly waive his right to a jury determination of drug quantity attributable to him. *See* note 1, *supra*. That Banuelos pled guilty, therefore, does not mean that we can ignore *Jordan*, in which we rejected the approach the dissent suggests and held that "the government cannot meet its burden under the harmless error standard when drug quantity is neither charged in the indictment nor proved to a jury beyond a reasonable doubt, if the sentence received is greater than the combined maximum sentences for the indeterminate quantity offenses charged." *Jordan*, 291 F.3d at 1097.

We are also unpersuaded by the dissent's suggestion that the Supreme Court's decision in *United States v. Vonn*, 535 U.S. 55, 122 S.Ct. 1043, 152 L.Ed.2d 90 (2002), "undercuts" the holding of *Jordan*. In *Vonn*, the court addressed the proper scope of an appellate court's inquiry into the effect of a Rule 11 violation. *Vonn* did not address the very different issue of reviewing an *Apprendi* violation for harmless error. Indeed, this court implicitly recognized the inapplicability of *Vonn* to the *Apprendi* context when it issued its decision in *Jordan*—two months after the Supreme Court decided *Vonn*.

because Banuelos did not allocute to drug quantity at the change of plea hearing or admit to drug quantity in a written plea agreement. Accordingly, the maximum permissible sentence on remand is five years in prison, pursuant to 21 U.S.C. § 841(b)(1)(D).

## II.

■ In the alternative, the government contends that Banuelos pled guilty to conspiracy to distribute an unspecified quantity of methamphetamine as well as marijuana and thus that he properly could have been sentenced to as many as 20 years in prison, pursuant to § 841(b)(1)(C). We agree that had Banuelos admitted beyond a reasonable doubt that he conspired to distribute methamphetamine, any *Apprendi* error would likely be harmless because Banuelos was sentenced to fewer than 20 years in prison. *See United States v. Saya*, 247 F.3d 929, 942 (9th Cir.) (suggesting that *Apprendi* error will be harmless unless the sentence imposed exceeds the statutory maximum authorized by the guilty verdict), *cert. denied*, 534 U.S. 1009, 122 S.Ct. 493, 151 L.Ed.2d 404 (2001). We disagree, however, with the government's characterization of Banuelos' guilty plea.

■ It is true that Count Two of the indictment charged Banuelos with conspiracy to distribute methamphetamine as well as marijuana, and one of the overt acts listed in the count charged that Banuelos sold a pound of methamphetamine to an undercover agent. It is also true that the court described the charge as conspiracy to distribute marijuana and methamphetamine:

> The Clerk: Mr. Banuelos, how do you now plead then to Count Two of the

superseding indictment which charges you with conspiracy to distribute a controlled substance, which is marijuana and methamphetamine? Are you guilty or not guilty?

> Banuelos: Guilty.

Moreover, Banuelos admitted during the plea colloquy that he sold one pound of methamphetamine to an undercover agent. More importantly, however, Banuelos consistently maintained during the change of plea hearing that he was entrapped to sell methamphetamine. *Cf. United States v. Silva*, 247 F.3d 1051, 1060 (9th Cir.2001) (rejecting *Apprendi* challenge where defendants pled guilty to conspiracy to manufacture with intent to distribute 50 grams or more of methamphetamine without ever disputing their involvement with that drug type and quantity). In assessing the scope of the facts established beyond a reasonable doubt by a guilty plea, we must look at what the defendant actually agreed to—that is, what was actually established beyond a reasonable doubt. Here, conspiracy to distribute methamphetamine never attained this status. Consequently, the only crime to which Banuelos admitted guilt beyond a reasonable doubt was conspiracy to distribute an unspecified amount of marijuana.[5] As discussed above, this crime carries a statutory maximum penalty of five years in prison.

**REVERSED and REMANDED.**

TALLMAN, Circuit Judge, dissenting in part.

The *Apprendi* error in this case was harmless beyond a reasonable doubt, and Banuelos' sentence should therefore remain unchanged.

---

**5.** Indeed, at the sentencing hearing, the government dropped its argument that Banuelos was responsible for any methamphetamine. The government stated that it would not "ask the court to include that one pound of methamphetamine in its drug calculus in terms of reaching the base offense level and/or applying any mandatory minimum sentence."

Overwhelming evidence linked Banuelos to an extensive drug distribution conspiracy. Confronted with this evidence, Banuelos decided to plead guilty after the government agreed to drop a methamphetamine distribution count. During his plea colloquy, Banuelos admitted his participation in the conspiracy. He further conceded that the conspiracy distributed more than 1,000 kilograms of marijuana. Because *Pinkerton v. United States,* 328 U.S. 640, 66 S.Ct. 1180, 90 L.Ed. 1489 (1946), instructs that a conspirator is generally liable for the reasonably foreseeable acts of his co-conspirators—and a conspiracy to distribute 1,000 or more kilograms of marijuana is punishable by up to life imprisonment under 21 U.S.C. § 841(b)(1)(A)—one might have thought Banuelos sealed his fate by making these admissions.

Nevertheless, with nothing to lose, Banuelos decided to roll the dice and challenge at sentencing the quantity of marijuana distributed by the conspiracy that was attributable to him. He argued that he was not responsible for 1,000 kilograms of marijuana because it was not reasonably foreseeable to him that the conspiracy distributed that quantity. At sentencing, then, the district court was asked to decide one critical question: for what quantity of drugs distributed by the conspiracy should Banuelos be held accountable?

Prior to the sentencing hearing—the only proceeding in this case in which this key factual issue was to be determined—Banuelos admitted to Probation Officer Ramsdell (who prepared the presentence investigation report) that Banuelos possessed quantities of marijuana well in excess of 100 kilograms with the intent to distribute the drug.[1] At the sentencing hearing, counsel for Banuelos admitted that 1816 pounds (about 825 kilograms) of marijuana distributed by the conspiracy was attributable to her client, although she emphasized that the biggest single drug deal in which her client participated was a 300 pound (about 136 kilograms) sale of marijuana. Thus, before a decision was rendered on the quantity of marijuana attributable to Banuelos, one fact was absolutely undisputed: by his own admissions Banuelos distributed more than 100 kilograms of marijuana.

Based on these admissions, Banuelos was subject to a mandatory minimum sentence of 5 years imprisonment and a statutory maximum sentence of 40 years imprisonment under 21 U.S.C. § 841(b)(1)(B). Because Banuelos was sentenced to less than 40 years imprisonment (he got 10 years), the *Apprendi* error here was harmless beyond a reasonable doubt. *United States v. Saya,* 247 F.3d 929, 942 (9th Cir.2001) (explaining that *Apprendi* relief is not available when the actual sentence received does not exceed the statutory maximum sentence authorized by facts proven beyond a reasonable doubt); *see also United States v. Jordan,* 291 F.3d 1091, 1095 (9th Cir.2002) (noting that one method to determine whether an *Apprendi* error is harmless is to examine if the sentence received "is greater than the maximum sentence the defendant should have faced").

Because the *Apprendi* error was harmless, Banuelos' sentence should stand. Nonetheless, the Court holds that Banuelos must be resentenced and that the maxi-

---

1. The presentence report notes: "In total, the defendant believed that he may have been involved in the distribution of 1,600 pounds (about 727 kilograms) of marijuana." In his objections to the presentence report, Banue- los did not challenge the 1600–pound figure. Instead, Banuelos admitted that he brokered one 300 pound sale (about 136 kilograms) of marijuana and attempted to broker an additional 300 pound sale.

mum possible sentence on remand is five years imprisonment because Banuelos pled guilty to an indeterminate quantity of marijuana.[2] *See* 21 U.S.C. § 841(b)(1)(D). According to the Court, Banuelos' admissions are irrelevant because our precedent instructs that "[a] stipulation at sentencing does not address the jury's finding and cannot be considered under *Apprendi*." *Jordan,* 291 F.3d at 1097; *see also United States v. Nordby,* 225 F.3d 1053, 1061 n. 6 (9th Cir.2000). But unlike our decisions in *Jordan* and *Nordby,* there was no jury finding in this case because Banuelos pled guilty to the conspiracy to distribute controlled substances. The only relevant issue remaining before the district court was to be decided *at sentencing;* specifically, the court had to determine what quantity of marijuana distributed by the conspiracy was attributable to Banuelos. Because the only factual issue in this case was to be resolved at sentencing, Banuelos' admissions to the court's probation officer made prior to the sentencing hearing, as well as his admissions made at the sentencing hearing, must be binding upon him if logic and reason mean anything in this case.[3]

2. The Court is simply incorrect when it asserts that Banuelos pled guilty only to "an unspecified quantity of marijuana." Banuelos' guilty plea explicitly contemplated that the district court would determine a quantity of marijuana attributable to him. At the plea colloquy Banuelos was warned that he faced a maximum punishment of life in prison and a mandatory minimum sentence of ten years imprisonment if the court determined that 1,000 kilograms or more of marijuana distributed by the conspiracy were attributable to him:

> THE COURT: Mr. Banuelos, now, the penalties that you're subject to in this case, the minimum and maximum, have you discussed those with your attorney?
> DEFENDANT: Yes, I have, Your Honor.
> THE COURT: And what are they? I guess—Let me ask the Government. It depends on the amounts and the type of drugs, correct?
> PROSECUTOR: The conspiracy to which Mr. Banuelos is pleading guilty involve [sic] the distribution of over 1,000 kilograms of marijuana. . . . Therefore, the penalties which is [sic] attached to this particular conspiracy are a mandatory minimum term of 10 years in custody and up to life imprisonment. . . .
> THE COURT: Do you understand what [the prosecutor] has just stated, Mr. Banuelos?
> DEFENDANT: Yes, I do, Your Honor.
> THE COURT: That's the minimum and maximum, if I find that you are responsible for the entire amount of drugs that was distributed by the conspirators in this case. Do you understand?
> DEFENDANT: Yes, Your Honor.
> THE COURT: However, as I said before, I will determine how much of the drugs you should be responsible for. But at this time I can't make any promises or guarantees about what sentence that will be. Do you understand?
> DEFENDANT: Yes, I do, Your Honor.

Thus, Banuelos effectively pled guilty to whatever quantity of marijuana the district court determined was appropriate at sentencing. A fair reading of the record belies the Court's overly technical characterization of Banuelos' Rule 11 plea. We have recently been warned by the Supreme Court of the perils of analysis that is "more zealous than the policy behind the Rule demands." *United States v. Vonn,* 535 U.S. 55, 122 S.Ct. 1043, 1054, 152 L.Ed.2d 90 (2002).

3. It is true, as the Court points out, that the district court did not advise Banuelos that he had a right to have a jury decide what quantity of marijuana was attributable to him. But this is irrelevant. Banuelos' admissions that he possessed more than 100 kilograms of the drug acted to waive his right to a jury determination of that quantity. *See United States v. Sanchez,* 269 F.3d 1250, 1272 n. 40 (11th Cir.2001) (en banc) ("[J]ust as the defendant's guilty plea to a substantive offense serves as the equivalent to a jury's finding beyond a reasonable doubt of that defendant's guilt, so does a stipulation to a specific drug quanti-

I note that *United States v. Vonn*, 535 U.S. 55, 122 S.Ct. 1043, 152 L.Ed.2d 90 (2002), undercuts the *Jordan* and *Nordby* approach that admissions made outside of the plea colloquy are irrelevant to an *Apprendi* analysis. *Vonn* held that, when considering the effect of a Rule 11 violation, an appellate court is not limited to consideration of only the record of the plea proceeding. *Id.* at 1054–55. Though *Vonn* did not address the scope of our inquiry when deciding *Apprendi* error, I believe it is relevant in this case where ample evidence in the record establishes beyond any doubt that Banuelos distributed more than 100 kilograms of marijuana—the only issue relevant to assessing whether the *Apprendi* error prejudiced Banuelos.

Banuelos' sentence should remain unchanged because the *Apprendi* error in this case was harmless beyond a reasonable doubt. Because the Court announces a different remedy, I respectfully dissent.

ty—whether as part of a written plea agreement, part of a jury trial, or *at sentencing*—serve as the equivalent of a jury finding on that issue, since the stipulation takes the issue away from the jury.") (emphasis added). Because Banuelos admitted his personal involvement in a conspiracy to distribute more than 100 kilograms of marijuana to the probation officer and through his attorney in open court, what possible harm arose from failing to empanel a jury to determine this quantity?

Of course, Banuelos never waived his right to have a jury determine if *1,000* kilograms of marijuana distributed by the conspiracy were attributable to him. If Banuelos had been sentenced to more than 40 years imprisonment—the statutory maximum for possessing more than 100 kilograms of the drug under 21 U.S.C. § 841(b)(1)(B)—then the *Apprendi* error in this case would not have been harmless, and Banuelos would be entitled to relief. That is not what happened here.