**NOT FOR PUBLICATION**

FILED

JUL 22 2011

MOLLY C. DWYER, CI
U.S. COURT OF APPEA



UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 10-10109 |
| Plaintiff - Appellee, | D.C. No. 2:06-cr-00222 MCE |
| v. | |
| ANTHONY EUGENE WASHINGTON, | MEMORANDUM[*] |
| Defendant - Appellant. | |

Appeal from the United States District Court
for the Eastern District of California
Morrison C. England, Jr., District Judge, Presiding

Argued and Submitted May 9, 2011
San Francisco, California

Before: B. FLETCHER and THOMAS, Circuit Judges, and GERTNER, District
Judge.**

_____

[*] This disposition is not appropriate for publication and is not precedent
except as provided by 9th Cir. R. 36-3.

** The Honorable Nancy Gertner, United States District Judge for the
District of Massachusetts, sitting by designation.

After a five-day trial, a jury convicted Defendant/Appellant Anthony Eugene

Washington ("Washington") of conspiring to distribute over 50 grams of crack

cocaine ("crack") between January 13, 2006, and May 18, 2006, in violation of 21 U.S.C. §§ 846 and 841(a)(1) (Count One); and of distributing cocaine on May 18, 2006, in violation of 21 U.S.C. § 841(a)(1) (Count Two). Washington appeals on two grounds. First, Washington claims that the district court erred by failing to instruct the jury that he was liable for only the quantity of crack that (1) fell within the scope of his agreement with his dealer or (2) was a reasonably foreseeable consequence of the conspiracy to distribute cocaine. Second, Washington argues that the district court coerced the jurors into returning a guilty verdict by instructing them to continue their deliberations after "five hours of intense debate" on the issue of whether Washington was liable for 50 grams of crack.

The district court plainly erred with its instructions on drug quantity. However, Washington cannot satisfy his burden of proving that this error affected his substantial rights. *See United States v. Olano*, 507 U.S. 725, 734-35 (1993). With respect to the district court's jury charge to continue deliberations, it is a closer call, but we need not resolve it because Washington cannot prove that any error was "plain." *Id.*

**BACKGROUND**

-2-

Working undercover, Agent Brian Nehring ("Nehring") of the Drug Enforcement Administration made a series of controlled buys from drug dealer Douglas Frost ("Frost") between August 2005 and May 2006, purchasing between 5 grams and 75.5 grams of crack cocaine each time, while recording their conversations. Nehring and fellow agents eventually concluded that Frost's supplier was Washington. In 2006, Nehring made eight controlled buys from Frost, and, as revealed by the phone records investigators gathered, each time Frost called Washington within minutes of receiving Nehring's request. Investors also witnessed Frost visiting Washington's residence on the days of some of the controlled buys.

Frost was arrested on May 18, 2006, with 185 grams of crack on him. Later that afternoon, agents searched Washington's residence and found two digital scales, plastic bags, and an empty bag of baking soda (which can be used to convert cocaine to crack).

Washington was charged with 1) conspiring with Frost to distribute, and possess with the intent to distribute, at least 50 grams of crack cocaine and at least 500 grams of cocaine; and 2) distributing cocaine. His trial started on March 31, 2009. The government sought to prove that Washington supplied Frost with powder cocaine and sometimes crack; that all of the drugs Frost sold to Nehring in 2006 came from Washington; and that Washington knew that Frost converted the

cocaine he purchased from Washington into crack. The government introduced five types of evidence: 1) phone records documenting the time and date of calls between Washington and Frost, including records showing that, for each controlled buy, Frost called Washington within minutes of receiving Nehring's drug order; 2) recordings and other documentation of Nehring's three controlled buys from Frost in 2005 and eight in 2006; 3) descriptions of what the agents witnessed on surveillance, including Frost's visits to Washington's house on some of the days Nehring purchased drugs; 4) Frost's testimony about his arrangement with Washington and his conversations with Washington, in which he told Washington he was cooking the cocaine from Washington in crack; and 5) the items collected from Washington's residence.[1]

The court instructed the jurors that they had to determine the quantity of drugs involved, but it did not instruct them how to go about doing so. Jury Instruction No. 22, the only instruction to deal with the weight and nature of the drugs distributed, stated:

> If you find the defendant guilty of the charge in Count One of the Superseding Indictment, you are then to determine (1) the net weight of the substances and (2) if the substance is crack cocaine and/or cocaine. Your

---

[1] A forensic chemist testified that cocaine residue was found on both of the digital scales as well as the baggies.

> decision as to the net weight and substance must be unanimous and must be beyond a reasonable doubt.
>
> The term "net weight" means the weight of the crack cocaine and/or cocaine without any packaging material.
>
> The government does not have to prove that the defendant knew the exact quantity of crack cocaine and/or cocaine.

The verdict form did little to clarify the issue. It asked first if Washington was guilty of Count One, conspiring to distribute cocaine or possess with intent to distribute cocaine, and then if he was guilty of Count Two, distribution of cocaine. If the jury found Washington guilty on Count One, they were asked: 1) "[D]id you find that the *substance involved* was at least 50 grams of a mixture or substance containing a detectable amount of cocaine base, that is, crack cocaine?" and 2) "[D]id you find that the *substance involved* was at least 500 grams of a mixture or substance containing a detectable amount of cocaine?" (emphasis added). There was no explanation of the meaning of the phrase "substance involved" or how the jury would arrive at that finding.

Deliberations began on April 14, 2009. The next day, the jury sent a note inquiring whether it could find the defendant guilty on Count One if it was unable to reach a unanimous decision as to the weight of the crack or cocaine. The court told the jury the answer to its question was "yes," namely, they could return a verdict on the conspiracy count without a finding of quantity, but nevertheless

-5-

re-read Instruction No. 22, which instructed them to find "the net weight of the substance" and "if the substance is crack cocaine and/or cocaine."[2]  An hour later, the jury sent another note:

> We are unable to reach a unanimous decision on only 1 question notwithstanding 5 hours of intense debate.  That issue is whether the substance involved in Count One was at least 50 grams of a mixture or substance containing a detectable amount of cocaine base.

Without objection from counsel, the court responded to the jury as follows:

> I have reviewed the communication that was received from you regarding your inability, apparently, to reach a particular question.  I will tell you that in light of the amount of evidence that was brought in during the course of this trial, the number of days that this Court met in trial taking that evidence, that I am not prepared to declare a mistrial of this particular issue at this point in time.  I'm going to ask that you continue your deliberations again.  It is almost 11:15.  I might suggest that you take an early lunch.  Do something else that might adjust your schedule, give yourself a little bit longer period of time to think about this.  But the bottom line is that I'm going to ask you to return and continue your deliberations and attempt to reach a verdict, a unanimous verdict, if you can in fact do so.  Again, the five hours of intense debate, I recognize that can be very trying when you are in a jury deliberation situation, but in light of the overall amount of time that has been put into this case, I'm not prepared to do that at this time.

---

[2] When the court answered "yes," it was correct that the jury could find Washington guilty of Count One without making any findings with respect to the quantity of drugs or whether the drugs were crack or cocaine. *See Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000).  Pursuant to 21 U.S.C. § 841(b)(1)(C) (2009), such a verdict would have subjected Washington to a statutory maximum sentence of 20 years and no mandatory minimum sentence.  However, the court confused its point by then reading Instruction No. 22, which said:  "If you find the defendant guilty of the charge in Count One . . . *you are then* to determine (1) the net weight of the substance . . . ." (emphasis added).

So I'm going to ask you to go back and deliberate. Again, if you want to take a break now or do something else that might alter your schedule and give you a different[] perspective, please feel free to do so. Is there anything that I can do to give you something to work with, any additional supplies, or anything else that you need in the jury deliberation room?

Soon thereafter, the jury announced: "We have reached verdict!" As to Count One, the jury found Washington guilty of conspiring to distribute and possess with intent to distribute cocaine. The jury found that the "substance involved was" at least 50 grams of crack, but answered "no" to the question of whether the "substance involved was" at least 500 grams of cocaine. As to Count Two, the jury also found Washington guilty of distribution of cocaine. The court sentenced Washington to 210 months. The court entered judgment on March 9, 2010; Washington timely appealed.

## DISCUSSION

Washington argues that the court improperly instructed the jury in two respects, first by failing to define how to determine the drug quantity involved in the conspiracy, and second by pressing the jury to continue deliberations. Since Washington failed to object to either of these issues during trial, we review both for plain error. *See United States v. Banks*, 514 F.3d 959, 974-76 (9th Cir. 2008); *United States v. Recio*, 371 F.3d 1093, 1099-1100 (9th Cir. 2004); Fed. R. Crim. P. 52(b). A court reviewing for plain error may reverse a district court's decision only

when the defendant establishes that (1) there was error; (2) the error was plain, or "obvious," under current law; (3) the error "affect[ed] substantial rights" of the defendant; and (4) the error "seriously affect[ed] the fairness, integrity or public reputation of judicial proceedings." *Olano*, 507 U.S. at 732-37 (internal quotation marks omitted).

## I.    Lack of Instruction on "Substance Involved"

While the verdict slip asked whether the "substance involved" in Washington and Frost's conspiracy was 500 grams of cocaine and/or whether the "substance involved" was 50 grams of crack, the court did not provide any explanation for the meaning of "involved."[3] The instructions neglected to say that Washington was liable for the crack Frost distributed only to the extent that 1) Washington supplied Frost with the crack; or 2) Washington supplied Frost with the cocaine used to

---

[3] Washington was entitled to findings by a jury beyond a reasonable doubt with respect to the quantity and types of drugs involved in the conspiracy. *See Apprendi*, 530 U.S. at 490. Under *Apprendi*, "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Id.* Indeed, "the amount of drugs for which a defendant is sentenced under 21 U.S.C. § 841(b)(1) is such a fact." *United States v. Nordby*, 225 F.3d 1053, 1056 (9th Cir. 2000), *overruled on other grounds by United States v. Buckland*, 289 F.3d 558 (9th Cir. 2002). A person convicted in 2009 of a crime involving at least 50 grams of crack was subject to a statutory maximum sentence of life, 21 U.S.C. § 841(b)(1)(A) (2009), and a person convicted of a crime involving at least 500 grams of cocaine was subject to a statutory maximum sentence of 40 years (unless the drugs resulted in a death, and then the statutory maximum sentence was life), *id.* § 841(b)(1)(B).

manufacture the crack and the manufacture of crack was either (a) within the scope of his conspiracy with Frost or (b) a reasonably foreseeable consequence of the conspiracy he had joined. *See United States v. Lococo*, 514 F.3d 860, 865 (9th Cir. 2008); *United States v. Banuelos*, 322 F.3d 700, 704 (9th Cir. 2003). This omission, Washington claims, was plain error.

The verdict slip's "substance involved" language comes from 21 U.S.C. § 841(b)(1), which prescribes mandatory minimum and maximum sentences for various drug-related crimes depending on the quantity of drugs "involv[ed]." But, in the case of a conspiracy, as this Court said in *Banuelos*, the full extent of the drugs linked to a conspiracy may not automatically be attributed to the defendant. 322 F.3d at 704. A conspirator is liable for only "the quantity of drugs that either (1) fell within the scope of the defendant's agreement with his coconspirators or (2) was reasonably foreseeable to the defendant." *Id.*

In *Lococo*, this Court made clear that the rule announced in *Banuelos* has special resonance when one conspirator provides his coconspirator with cocaine, but the second transforms it into crack. 514 F.3d at 864-66. This Court held it was error to sentence the defendant, who had pled guilty to conspiring to distribute cocaine while denying he knew that the conspiracy involved crack, based on the amount of crack "involved" in the conspiracy, without a jury having found that Lococo knew or reasonably could have foreseen that the conspiracy involved the

-9-

crack.  *Id.* at 865 ("Lococo didn't admit that he knew or could reasonably foresee that the conspiracy involved crack cocaine.  Quite the contrary, he repeatedly denied it.  So even if the district court had made the findings required by *Banuelos*, those findings would have violated *Apprendi* . . . by exposing Lococo to a higher statutory maximum based on facts he never admitted.").  Under *Lococo*, *Banuelos*, and their progeny, the district court's failure to instruct about the meaning of "substance involved" was error.  Indeed, because *Lococo* is directly controlling authority, the district court committed "plain error."  *See Olano*, 507 U.S. at 734 (explaining that "plain error" is an error that is "obvious").  Finally, it was an error of constitutional proportion, relieving the government of its burden to prove all elements of the crime.  *See In re Winship*, 397 U.S. 358, 364 (1970).

Since Washington failed to object to the instruction at trial, he bears the burden of persuasion with respect to demonstrating that the error affected his "substantial rights."  *See Olano*, 507 U.S. at 734.  To satisfy this burden, Washington must show that the erroneous instruction "affected the outcome" of his trial.  *Id.*  He has failed to do so.

The government offered both direct and circumstantial evidence that Washington knew Frost was converting Washington's cocaine into crack for sale to Nehring—Frost's testimony, the items found during the search of Washington's home, the longstanding Frost-Washington relationship.  Washington cannot prove

"with fair assurance, after pondering all that happened without stripping the erroneous action from the whole," that a properly instructed jury would have found that Washington was not liable for 50 grams of crack.[4] *See Kotteakos v. United States*, 328 U.S. 750, 765 (1946).

## II.   Charge to Continue Deliberations

Washington further claims that the district court coerced the jury into finding that the conspiracy involved 50 grams of crack by instructing them to continue deliberating after they announced their failure to reach a unanimous verdict on whether the conspiracy involved 50 grams of crack, despite five hours of intense debate on that subject.  Whether the court's instruction was improperly coercive is debatable.  In any case, it was not plain error.

The controlling question is whether the court's instruction was coercive.  *See, e.g.*, *Weaver v. Thompson*, 197 F.3d 359, 365 (9th Cir. 1999); *Jiminez v. Myers*, 40 F.3d 976, 979-80 (9th Cir. 1994).  In answering that question, we consider four factors: (1) the form of the jury charge, (2) the length of deliberations following the

---

[4] Rather than arguing that the outcome would have been different had the jury received proper instruction, Washington claims that the verdict subjected him to a harsher sentence than he would have received for a conspiracy involving 50 grams of cocaine.  While Washington is indeed correct that the mandatory minimums for 50 grams of these two types of drugs are different, this fact alone does not fulfill Washington's obligation to show that the outcome of his trial would have been different if the jury had received proper instructions.  *See Olano*, 507 U.S. at 734-35.

charge, (3) the total time of deliberations, and (4) any other indicia of pressure. *Weaver*, 197 F.3d at 366.

On the one hand, as Washington argues, the court required the jury to continue deliberations after five hours of what they described as "intense debate" on the crack issue. And it did so without offering cautionary language—that no juror should abandon his or her reasonable beliefs to arrive at a verdict.

But neither did the court request that any juror reexamine the legitimacy of his or her position, as in the traditional *Allen* charge.[5] *See Allen v. United States*, 164 U.S. 492, 501 (1896). While courts have not "settled upon a precise formulation for the charge," *United States v. Mason*, 658 F.2d 1263, 1265 (9th Cir. 1981), the defining feature of an *Allen* charge is the request that jurors, particularly minority jurors, re-examine their views of the evidence, *see, e.g.*, *Rodriguez v.*

---

[5] Indeed, in its initial instructions to the jury, the court said:

> Each of you must decide the case for yourself, but you should do so only after you have considered all the evidence, discussed it fully with the other jurors, and listened to the views of your fellow jurors. Do not be afraid to change your opinion if the discussion persuades you that you should. But do not come to a decision simply because other jurors think it is right. It is important that you attempt to reach a unanimous verdict, but, of course, only if each of you can do so after having made your own conscientious decision. Do not change an honest belief about the weight and effect of the evidence simply to reach a verdict.

*Marshall*, 125 F.3d 739, 750 (9th Cir. 1997) ("An *Allen* charge is traditionally understood as an instruction to work towards unanimity by considering the views of others when a jury has reached an impasse in its deliberations."), *overruled on other grounds by Payton v. Woodford*, 299 F.3d 815, 829 n.11 (9th Cir. 2002); *United States v. Wills*, 88 F.3d 704, 716 (9th Cir. 1996). For the most part, the court was merely asking the jurors to take a break and then continue deliberations. On a plain error review, we cannot say such an instruction was coercive.[6]

## CONCLUSION

For the foregoing reasons, the district court's judgment is **AFFIRMED**.

---

[6] While within about two hours of resuming deliberations, the jury reached a verdict, the record does not establish that jurors felt pressured by the court to surrender their views. It is not enough to claim, as Washington does, that the exclamation point in the foreperson's note "We have reached verdict!" suggests "they were giving the court what it wanted."