CLIFTON, Circuit Judge,
with whom Judge Block concurs:[1]
Section 841(b) sets forth the penalties to be applied for violations of the drug offenses enumerated in § 841(a). The penalties differ depending on the drug quantity “involv[ed]” in the violation of § 841(a). 21 U.S.C. § 841(b). As the portion of- her opinion that is Judge Ikuta’s special concurrence explains, Op. at 1095-97, we first faced the question of how to assign individual responsibility for a particular drug quantity in United States v. Becerra, 992 F.2d 960 (9th Cir. 1993). In that case, the district court sentenced the defendants to the statutory mandatory minimum based on the drug quantity associated with their offenses. Id, at 963. On appeal, we explained that under the Sentencing Guidelines “each conspirator may be sentenced only for the quantity of drugs that he reasonably foresaw would be distributed or that fell within the scope of his own agreement with his co-conspirators.” Id, at 966 (emphasis added).[2] The special concurrence refers to this standard as the “disjunctive formulation,” and we adopt that terminology as well.
The court in Becerra applied that same disjunctive formulation to quantity determinations under § 841(b), “rejecting] the government’s argument that sentencing under the statutory mandatory mínimums should differ from the Guidelines.” Id. at 967 n.2. The court stated that it saw “no reason why sentencing under the statutory mandatory mínimums should differ” from sentencing under the Guidelines because the statutory mínimums “are, .in essence, part of the Guidelines scheme.” Id.
*1105 Our subsequent cases interpreting Becerra reaffirmed this aspect of its holding. In United States v. Mesa-Farias, 53 F.3d 258, 260 (9th Cir. 1995), we stated that Becerra “required ... that sentencing for conspiracy be the same under § 841(b) as under the Sentencing Guidelines.” Similarly, in United States v. Banuelos, 322 F.3d 700, 704 (9th Cir. 2003), a case involving a conspiracy to distribute marijuana, we referenced the disjunctive formulation applied in Becerra and noted that this standard was not only “well-settled as a matter of sentencing under the Guidelines” but has also been “applied ... to sentencing under the statute of offense.”
However, the disjunctive formulation was not in fact as “well-settled” as the majority in Banuelos suggested. As the special concurrence has explained, Op. at 1096-98, by the time that case was decided, in 2003, the Guidelines had already been amended in 1992 to require that defendants be held accountable only for the conduct of others that was both “(i) in furtherance of the jointly undertaken criminal activity; and (ii) reasonably foreseeable in connection with that criminal activity.” U.S.S.G. § 1B1.3 cmt. n.2 (1992) (emphasis added). We will refer to this test as the “conjunctive formulation.”
We first explicitly recognized the shift in the Guidelines from the disjunctive to the conjunctive formulation in United States v. Ortiz, 362 F.3d 1274 (9th Cir. 2004). In that case we wrote “to clarify the proper standard for determining relevant conduct for jointly undertaken criminal activity under USSG § 1B1.3(a)(1)(B) as amended in 1992.” Id. at 1275. Under the new conjunctive formulation, we emphasized, “the conduct must be both in furtherance of jointly undertaken activity and reasonably foreseeable.” Id. But because Ortiz was only a Guidelines case, it did not have occasion to determine whether the standard applied under § 841(b) should change along with the Guidelines standard.
We face that question directly here. The defendants’ argument is straightforward. If our holdings in Becerra, Mesa-Farias, and Banuelos require that the same standard be applied when sentencing for a conspiracy under § 841(b) as under the Guidelines, defendants argue, then when Ortiz changed the test to be applied under the Guidelines, it also changed the test to be applied under § 841(b). That is a strong argument.[3]
The special concurrence would prefer to apply what it identifies as the holding of our precedents, though the logic has departed. In Judge Ikuta’s view, “neither the Sentencing Commission’s 1992 revisions to § 1B1.3 nor our interpretation of § 1B1.3 in Ortiz constitutes intervening controlling authority that is ‘clearly irreconcilable’ with Banuelos.” Op. at 1098 (quoting Miller v. Gammie, 335 F.3d 889, 900 (9th Cir. 2003) (en banc)). We understand this position. Each three-judge panel should be careful to respect our precedent, and as the special concurrence correctly notes, changes to the Sentencing Guidelines do not ordinarily “affect our interpretation of a statute such as § 841.” Op. at 1098.
This is not the ordinary situation, though. In connection with § 841(b), this court has clearly held, on at least three separate occasions, that the same approach should be applied when analyzing culpability under § 841(b) as is applied under the Guidelines. We provided no other reason in Banuelos for applying the disjunctive formulation to § 841(b) other than that the same test was then applied under the Guidelines. See Banuelos, 322 F.3d at 704. *1106 That could, therefore, also be identified as the holding of. our precedents. Now that the disjunctive formulation is no longer applied under the Guidelines, the reasoning of Banuelos in favor of the disjunctive formulation has been completely undermined.
In support of her view that Bamielos remains good law, Judge Ikuta’s special concurrence highlights that "Banuelos itself followed Becerra’s interpretation of § 841(b) rather than change that interpretation to conform to § 1B1.3 as revised in 1992.” Op. at 1098. But this argument seems more a rationalization after the fact than a description of the reasoning in Ban-uelos, as the panel in that case did not indicate that it was aware of the 1992 change in the Guidelines. Indeed, it explicitly referred to the already-outdated- disjunctive formulation as “well-settled under the Guidelines.” Banuelos, 322 F,3d at 704. Furthermore, the' defendant in Banuelos did not “dispute that the distinct court conducted the proper substantive inquiry” in applying the disjunctive formulation, as we noted in Ortiz, 362 F.3d at 1277 (quoting Banuelos, 322 F.3d at 704). The Banuelos panel did not have reason to focus its attention on the change in the Guidelines approach. That decision should not, therefore, be understood to endorse a divergence between the standard to be applied under § 841(b) and the Guidelines. We did not appear to be aware in that decision that there was a divergence.
A similar lack of awareness appears to have infected our decision in United States v. Reed, 575 F.3d 900 (9th Cir. 2009). In that case we held that it was not plain error to make use of the disjunctive formulation in establishing a defendant’s base offense level under the Guidelines, in spite of the contrary language in the Guidelines themselves. Our decision in Reed did not cite to our holding in Ortiz-, that the conjunctive formulation was required under the Guidelines, however. Instead, it held that the use of the disjunctive approach was not plain error because it was “consistent with our prior statements of the law relating to sentencing under the statutory mandatory minimum,” citing to Banuelos. Reed, 575 F.3d at 927, In so doing, it appeared to.endorse the result that the standard to be applied under § 841(b) differs from the applicable Guidelines standard, regardless of our court’s multiple statements, including in Banuelos itself, that they should be the same.
Ultimately, en bane review will likely be necessary to sort the whole mess out. As the special concurrence points out, Op, at 1098-99, there are other reasons to revisit some of the issues raised in Becerra and Banuelos. Even if we decide to maintain the result of Banuelos, that the. disjunctive formulation should be applied to sentencing under § 841(b), we would have an opportunity to give reasoning for that result that makes more sense than our current undermined logic.
We do not have to resolve those questions to reach a result in. this case, however. There is another basis on which we can and do hold that the convictions are affirmed on, this issue. Because the defendants did not object to Jury Instruction 60 on the basis they raise here, the plain error standard of review applies. United States v. Ameline, 409 F.3d 1073, 1078 (9th Cir. 2005) (en banc).[4] Under that standard, *1107 relief is warranted only in the presence of “(1) error, (2) that is plain, and (3) that affects substantial rights.” Id. (quoting United States v. Cotton, 535 U.S. 625, 631, 122 S.Ct. 1781, 152 L.Ed.2d 860 (2002)). “If these three conditions of the plain error test are met, an appellate court may exercise its discretion to notice a forfeited error that (4) ‘seriously affects the fairness, integrity, or public reputation of judicial proceedings.’” Id. (quoting Cotton, 535 U.S. at 631, 122 S.Ct. 1781).
In this case, even if the jury instructions were erroneous, any error by the district court did not affect the defendants’ substantial rights. In order to satisfy this prong of the test, defendants must “establish ‘that the probability of a different result is sufficient to undermine confidence in the outcome of the proceeding.’ ” Id. (quoting United States v. Dominguez Benitez, 542 U.S. 74, 83, 124 S.Ct. 2333, 159 L.Ed.2d 157 (2004)). Defendants have not met that burden here. Had the jury been correctly instructed that it was required to find that the drug quantities at issue were associated with conduct “in furtherance of the jointly undertaken criminal activity,” it seems highly unlikely that a different result would have been reached.
Jury Instruction 50 pertained to the specific drug quantity associated with the conspiracy to distribute methamphetamine alleged in Count Seven. The government presented substantial evidence that each of the four defendants was personally involved in this drug distribution conspiracy. Rafael Munoz Gonzalez was in charge of Puente-13 and its drug distribution activities. Cesar Munoz Gonzalez managed drug production and sales. Aldana assisted in extorting drug payments from rival gangs and collecting “taxes” associated with drug distribution activities. Torres played a role in both transporting and selling the drugs. Based on this evidence, it is hard to see how a jury could find that the quantity of drugs at issue was not distributed by the gang “in furtherance of the jointly undertaken criminal activity.” Drug dealing was not something that happened on the sidelines — it was the primary object of the conspiracy of which all defendants were members.
An additional factor demonstrating the lack of prejudice here is that the jury found the defendants individually responsible for conspiring to distribute the same quantity of drugs at issue in Count Seven as part of racketeering activity charged elsewhere in the indictment. With respect to the substantive racketeering offenses charged in Count Two, the jury found that each of the four defendants “committed a pattern of racketeering activity” that included conspiring to distribute at least 50 grams of pure methamphetamine or 500 grams of a mixture or substance containing a detectable amount of. methamphetamine. This conclusion would be hard to square with a jury finding that this quantity of drugs was not distributed in furtherance of a jointly undertaken criminal conspiracy.
Because relief is not warranted under the plain error standard of review, we affirm the defendants’ sentences. We are not prompted to call for our court to revisit the broader issue en banc in the context of this case because in the end it would not alter its outcome. See Go v. Holder, 744 F.3d 604, 614 (9th Cir. 2014) (Wallace, J., *1108 specially concurring) (“[W]e have also held that even where the orderly development of our case law might benefit from an en bane review, it is not necessary to engage in such review if a particular case does not compel us to do so. Here, ... because we arrive at the same result regardless of the level of deference provided to the [government’s] interpretation of [the regulation], this case does not require us to call for en banc review[.]” (citation and internal quotation marks omitted)); Vasquez v. Astrue, 572 F.3d 586, 593 n.5 (9th Cir. 2009) (declining to call case en banc to resolve intra-circuit conflict when “[the] case does not require” it, even though “orderly development of the Circuit’s law in [the] area might benefit from an en banc review”); United States v. Frank, 956 F.2d 872, 879 (9th Cir. 1992) (“We do not attempt to resolve [the intra-circuit] conflict in this matter because we conclude that the district court’s ruling would not be erroneous under either standard.”).
We remain concerned, though, about the state of our caselaw. As it stands, our precedent either is in conflict or calls for us to apply the disjunctive formulation to sentencing under § 841(b) and the conjunctive formulation to sentencing under the Guidelines, even though we adopted the disjunctive formulation under § 841(b) in the first place to make the two approaches identical. That inconsistency cannot stand. In a case where it matters, it should be addressed en banc.

. This opinion states the opinion of the majority of the court as to the defendants' challenge to Jury Instruction 50. See Op, at 1092 n.l.

. As the special concurrence notes, Op. at 1096 n.8, the court in Becerra appeared to be relying on the language present in the 1991 version of the Guidelines, which provided in the application notes to § 1B 1.3 that defendants should not be held accountable for conduct that “was neither within the scope of the defendant’s agreement, nor was reasonably foreseeable in connection with the criminal activity the defendant agreed to jointly undertake.” U.S.S.G. § 1B1.3 cmt. n.1 (1991).

. As the special concurrence points out, Op. at 1097 n.9, the language of § IB 1.3 was revised yet again in 2015. The current version was not applicable at the time of Defendants’ trial, and they do not argue that it should have been applied by the district court.

. Defendants argue that review should be de novo, because they did in fact object to the content of Jury Instruction 50, During deliberations, the jury sent a note to the district judge asking about the definition of the term "reasonably foreseeable" in the jury instructions, The defendants objected to the definition that was ultimately provided to the jury, This objection was not enough to preserve the issue of whether the district court should have used the conjunctive formulation. Defendants solely contested the definition of "reasonably *1107 foreseeable” and did not argue to the district court that the jury was also required to find that the drug quantity was associated with conduct undertaken “in furtherance of the jointly undertaken criminal activity.” Thus, their objection was not "specific enough to ‘bring into focus the precise nature of the alleged error.’ ” United States v. Pineda-Doval, 614 F.3d 1019, 1026 (9th Cir. 2010) (quoting Palmer v. Hoffman, 318 U.S. 109, 119, 63 S.Ct. 477, 87 L.Ed. 645 (1943)).