**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Arturo Daniel VELASCO–HEREDIA,**
**aka Arturo Velasco–Heredia,**
**Defendant–Appellant.**

No. 00–50107.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Jan. 10, 2001.

Filed Jan. 21, 2003.

Debra Ann DiIorio, DiIorio and Hall, APC, San Diego, CA, for defendant-appellant.

Roger W. Haines, Jr., United States Attorney's Office, San Diego, CA, for plaintiff-appellee.

Before TROTT, THOMAS, and BERZON, Circuit Judges.

**ORDER**

Further action on the petition for rehearing was deferred until the final disposition of *U.S. v. Buckland,* No. 99–30285

was entered. With the filing of the new opinion in this case the petition for rehearing is rendered MOOT.

**OPINION**

TROTT, Circuit Judge.

This case requires us to assess the effect of *Apprendi v. New Jersey,* 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), as refined by *Harris v. United States,* 536 U.S. 545, 122 S.Ct. 2406, 153 L.Ed.2d 524 (2002), on the prosecution of a federal drug case conducted during the embryonic stages of the sentencing revolution occasioned by *Apprendi.* Specifically, we must decide whether the district judge erred after a bench trial by employing over objection the preponderance of evidence standard of proof to determine the amount of marijuana attributable for sentencing purposes to Defendant–Appellant Arturo Velasco–Heredia ("Velasco–Heredia"), and, if the judge did err, whether the error was harmless beyond a reasonable doubt.

We have jurisdiction over this timely appeal pursuant to 28 U.S.C. § 1291, and for the reasons explained below, we affirm Velasco–Heredia's conviction but reverse his sentence.

**I**

**Background**

**A. Factual History**

During the last few weeks of May 1999, the United States Customs Service ("Customs") conducted surveillance of a suspected marijuana "stash house" at 614 Alice Street in San Diego, California. One of the vehicles spotted at the 614 Alice Street home was a Mitsubishi pickup truck registered to Velasco–Heredia. On June 4, 1999, Customs inspectors intercepted Velasco–Heredia driving this pickup from Mexico into the United States at the San

Ysidro, California Port of Entry. The inspectors searched the pickup truck and found a large amount of marijuana hidden inside. Nevertheless, they did not alert Velasco–Heredia to their find, and let him enter the United States in order to follow him. Velasco–Heredia soon realized, however, that he was being tailed, and he undertook evasive maneuvers in an attempt to lose his pursuers, at which point the Customs agents stopped and arrested him. They recovered 17.59 kilograms of marijuana from the pickup.

Around the same time, other Customs agents approached the suspected marijuana stash house at 614 Alice Street in San Diego where they had seen Velasco–Heredia's truck. Two people, Jesus Hermosillo ("Hermosillo") and Arcelia Castro ("Castro"), were present. Hermosillo claimed to own the house and consented to searches of it and of an adjoining storage shed. Agents found various items of evidence suggesting marijuana use and distribution, the most important to this case being 66.1 pounds of "marijuana wrappings."

Hermosillo and Castro waived their *Miranda* rights and answered agents' questions. Both admitted that a drug smuggling and distribution operation existed, that the 614 Alice Street stash house was a drop-off point for the drugs, and that a man named Javier Gomez–Sandoval ("Gomez–Sandoval") directed the operation. Further, both Hermosillo and Castro implicated Velasco–Heredia in the smuggling operation. Hermosillo explained that "Velasco has delivered most of the marijuana," and Castro stated that she had seen Velasco–Heredia and his Mitsubishi truck at the stash house on at least four occasions during the past month.

Customs agents also stopped a man walking away from the stash house. The agents identified him as Javier Gomez–Sandoval, the man Hermosillo and Castro had fingered as the ringleader of the drug operation.

## B. Procedural History

All four persons—Gomez-Sandoval, Hermosillo, Castro, and Velasco–Heredia—were arrested and charged in a four count indictment with conspiracy and substantive marijuana violations. Gomez–Sandoval was released on bond, failed to appear, and remains a fugitive. Castro pleaded guilty to misprision of a felony and was sentenced to fifteen months in prison. Hermosillo pleaded guilty to Count Three of the indictment, which charged conspiracy, and was sentenced to sixty months in prison.

Velasco–Heredia initially pleaded guilty to Count Three, the conspiracy count. All parties understood that in consideration of his plea, the remaining counts would be dismissed. During the guilty plea colloquy, however, defense counsel and the prosecutor disagreed about the amount of drugs attributable to Velasco–Heredia as a co-conspirator. According to the defense, Velasco–Heredia was responsible for only the 17.59 kilograms of marijuana found in his truck when he was arrested. According to the government, however, Velasco–Heredia was responsible for more than 285 kilograms of marijuana. The government's number was calculated on the basis of: (1) the 66.1 pounds of marijuana wrappings recovered from the stash house, which would have enclosed approximately 269 kilograms of marijuana, and (2) the 17.59 kilograms of marijuana that had been found in Velasco–Heredia's pickup truck. Adding these amounts together, the government asserted that Velasco–Heredia was responsible for over 285 kilograms of marijuana. The severity of Velasco–Heredia's sentence, of course, would depend on whether the court would accept the greater or the lesser amount.

The district judge informed Velasco–Heredia that he could plead guilty to conspiracy to distribute marijuana, and that she would determine the amount of marijuana attributable to him during the sentencing phase. With this understanding, he entered his plea.

Soon thereafter, the United States Supreme Court decided *Jones v. United States,* 526 U.S. 227, 119 S.Ct. 1215, 143 L.Ed.2d 311 (1999). In *Jones,* the Court said in a footnote that "any fact (other than prior conviction) that increases the maximum penalty for a crime must be charged in an indictment, submitted to a jury, and proven beyond a reasonable doubt." *Id.* at 243 n. 6, 119 S.Ct. 1215. Armed with the *Jones* footnote, counsel for Velasco–Heredia went back to the district court and argued that the government must prove the quantity of drugs attributable to him beyond a reasonable doubt, not merely by a preponderance of evidence. Judge Gonzalez disagreed with Velasco–Heredia that *Jones,* which was not a controlled substance case, required her to find the amount of drugs beyond a reasonable doubt, but in an admirable display of caution, she allowed Velasco–Heredia to withdraw his guilty plea in order to preserve his argument for appeal.

Velasco–Heredia then waived for all purposes his right to a trial by jury, and the parties proceeded with a bench trial to be decided based upon stipulated facts. In the written stipulation, which the government signed, Velasco–Heredia admitted he had agreed with another person to pick up 17.59 kilograms of marijuana in Mexico, drive the drugs into the United States, and leave them at an unspecified location to be retrieved by another person. The stipulation did not address any additional amount of marijuana. After the stipulation was presented, Velasco–Heredia made a motion for a judgment of acquittal under Federal Rule of Criminal Procedure 29 ("Rule 29"), claiming that the government failed to prove the quantity of drugs for which he was responsible. *See* FED. R. CRIM. P. 29. Judge Gonzalez denied the Rule 29 motion, concluding that quantity of drugs is "not an element of the offense of conspiracy, that the elements are the agreement and knowingly participating in the agreement and knowing the object of the agreement or conspiracy." She concluded that the government had proved these elements of conspiracy as charged in Count Three of the indictment—which did not specify a quantity of drugs—beyond a reasonable doubt. Accordingly, Judge Gonzalez found Velasco–Heredia guilty of one count of conspiring to distribute an unspecified quantity of marijuana in violation of 21 U.S.C. §§ 841(a) and 846.[1] We note that the only evidence in the record of an amount of marijuana supporting the conviction was 17.59 kilograms.

The court then moved to sentencing. Because Velasco–Heredia had been convicted of conspiracy, the court determined his sentence pursuant to 21 U.S.C. § 846 as though he had been convicted of "the offense, the commission of which was the object of ... the conspiracy." During sentencing, Judge Gonzalez, employed the preponderance of evidence standard and found, based on information submitted to her, that Velasco–Heredia was responsible for 285 kilograms of marijuana. Because this finding made Velasco–Heredia responsible for between 100 kg and 1000 kg of marijuana, the court concluded that he was subject to the increased penalty provisions of 21 U.S.C. § 841(b)(1)(B)(vii), i.e., five to forty years, including the statutory mini-

---

1. Velasco–Heredia asks us to reverse his conviction on the ground that it is not supported by sufficient evidence. We disagree and af-

firm his conviction of conspiracy to distribute marijuana.

mums of five years in prison and four years of supervised release. Judge Gonzalez acknowledged in her reasoning that her calculations under the United States Sentencing Guidelines produced a sentencing range from thirty-seven to forty-six months. However, because the high end of that guideline range (forty-six months) was below the statutory minimum of sixty months prescribed by 21 U.S.C. § 841(b)(1)(B), she determined that the statutory minimum for that section trumped the Guidelines. *See* U.S.S.G. § 5G1.1(b) ("Where a statutorily required minimum sentence is greater than the maximum of the applicable guideline range, the statutorily required minimum sentence shall be the guideline sentence."). Consequently, Judge Gonzalez sentenced Velasco–Heredia to the statutory minimum sentence of sixty months in prison followed by four years of supervised release. *See* 21 U.S.C. § 841(b)(1)(B).

## II

## Discussion

### A. The Sentence

This case has been deeply affected by the continuing and fundamental evolution in how defendants charged with drug crimes must be sentenced. What caused the change, of course, was the Supreme Court's watershed decision in *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), which held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Apprendi*, 530 U.S. at 490, 120 S.Ct. 2348.

At the time of Velasco–Heredia's bench trial and sentencing, Ninth Circuit precedent clearly held that drug quantity was not an element of conspiracy to distribute marijuana and could be proved for sentencing purposes by a preponderance of the evidence. *See, e.g., United States v. Sotelo–Rivera,* 931 F.2d 1317, 1319 (9th Cir.1991). The usual course in a trial such as this was not to determine drug quantity until sentencing. Therefore, Judge Gonzalez's procedural approach to this issue and her use of the preponderance standard to determine the amount of drugs attributable to Velasco–Heredia was fully in accord with controlling Ninth Circuit law. However, first *Jones,* 526 U.S. at 243 n. 6, 119 S.Ct. 1215, and then *Apprendi,* 530 U.S. at 490, 120 S.Ct. 2348, cast a cloud over this precedent and raised a question as to whether drug quantity is a fact that the government must prove beyond a reasonable doubt in connection with sentencing.

■ Sitting en banc in *United States v. Buckland,* 277 F.3d 1173 (9th Cir.2001) (en banc), we answered this and related questions in the affirmative. In *Buckland,* we held that because the determination of drug quantity can increase the maximum penalty to which a defendant is subject, it is the type of fact that the government must prove beyond a reasonable doubt. We said,

We honor the intent of Congress and the requirements of due process by treating drug quantity and type, which fix the maximum sentence for a conviction, as we would any other material fact in a criminal prosecution: it must be charged in the indictment, submitted to the jury, subject to the rules of evidence, and proved beyond a reasonable doubt.

*Id.* at 1182. *See also United States v. Nordby,* 225 F.3d 1053, 1059 (9th Cir.2000) (overruling *Sotelo–Rivera* and related cases as in conflict with *Apprendi* ).

■ Enter *Harris v. United States,* 536 U.S. 545, 122 S.Ct. 2406, 153 L.Ed.2d 524 (2002). In this case, the Supreme Court held that *Apprendi* had not overruled its holding fourteen years earlier in *McMillan*

*v. Pennsylvania,* 477 U.S. 79, 106 S.Ct. 2411, 91 L.Ed.2d 67 (1986), which "sustained a statute that increased the minimum penalty for a crime, though not beyond the statutory maximum, when the sentencing judge found, by a preponderance of the evidence, that the defendant had possessed a firearm." *Harris,* 536 U.S. at ——, 122 S.Ct. at 2409. The Court made it clear that a sentencing court may continue to use the preponderance of evidence standard to find facts that require the imposition of a specified minimum sentence, so long as that sentence does not exceed the maximum sentence provided by the relevant statute. A plurality of the Court said,

> As we shall explain, *McMillan* and *Apprendi* are consistent because there is a fundamental distinction between the factual findings that were at issue in those two cases. *Apprendi* said that any fact extending the defendant's sentence beyond the maximum authorized by the jury's verdict would have been considered an element of an aggravated crime—and thus the domain of the jury—by those who framed the Bill of Rights. The same cannot be said of a fact increasing the mandatory minimum (but not extending the sentence beyond the statutory maximum), for the jury's verdict has authorized the judge to impose the minimum with or without the finding. As *McMillan* recognized, a statute may reserve this type of factual finding for the judge without violating the Constitution.

*Id.* at ——, 122 S.Ct. at 2414 (citations omitted). In *United States v. Hernandez,* 314 F.3d 430 (9th Cir.2002), we concluded that *Harris* in no way undermines our analysis in *Buckland.*

■ With the benefit of hindsight, we conclude that the district court erred when it determined by a preponderance of the evidence that because Velasco–Heredia was responsible for more than 50 kilograms of marijuana, he must be sentenced pursuant to § 841(b)(1)(B) to a minimum of five-years. This approach cannot be squared with the Supreme Court's statement in both *Apprendi* and then *Harris* that "[a]ny fact that ... exposes the criminal defendant to a penalty *exceeding* the maximum he would receive if punished according to the facts reflected in the jury verdict alone" is a fact that must be submitted to the relevant factfinder and determined beyond a reasonable doubt. *Id.* at ——, 122 S.Ct. at 2417 (emphasis in original); *Apprendi,* 530 U.S. at 483, 120 S.Ct. 2348. The situation in this case contrasts with that in *Harris,* in which the defendant was never *exposed* to a greater maximum sentence. A finding that a defendant "brandished" a firearm under 18 U.S.C. § 924, the statute pursuant to which Harris was sentenced, raises the mandatory minimum from five to seven years, but does not affect the maximum sentence to which the defendant may be sentenced. With or without a finding that the defendant "brandished" a firearm, the maximum sentence under § 924 is life imprisonment. *See Harris,* 536 U.S. at ——, 122 S.Ct. at 2424 (Thomas, J., dissenting).

The only amount of marijuana introduced during the guilt phase of this process was 17.59 kilograms, below the amount required to engage the sentencing provisions of subsection (B). Accordingly, because Velasco–Heredia's sentencing range as fixed by the court's verdict was constitutionally restricted to zero to five years pursuant to § 841(b)(1)(D), his exposure to the imposition of from five to forty years amounted to clear *Apprendi* error.

**B. Was This Error Harmless?**

■ The government argues that whether the *Apprendi* error was harmless is controlled by *Harris:* (1) because Velas-

co–Heredia's actual sentence was within the statutory range provided for the violation of which he had been convicted, zero to five years, and (2) because *Harris* allows a sentencing court to fix mandatory minimums within the statutory range by a preponderance of the evidence, Velasco–Heredia suffered no constitutional damage at all. In other words, even though the sentencing instructions in § 841(b)(1)(D) governing·violations of less than 50 kilograms of marijuana make no provisions for a mandatory minimum sentence based on quantity, it is appropriate to borrow the mandatory minimum provisions from § 841(b)(1)(B), a section that comes into play by its own language only "[i]n the case of a violation of subsection (a) of this section [Unlawful Acts] involving . . . (vii) 100 kilograms or more of a mixture or substance containing a detectable amount of marijuana. . . ." We are unpersuaded by the government's argument.

In the main, the government puts the cart before the horse. As we read § 841(b)(1)(B), it does not apply unless and until 100 kilograms or more of marijuana are properly on the sentencing table. After *Apprendi,* this event cannot happen until the jury, or the court in a bench trial, finds beyond a reasonable doubt that this is the quantity involved in the violation. Then, and only then, does the mandatory minimum of five years become relevant as to the sentence. The conspiracy offense of which Velasco–Heredia was convicted for purposes of sentencing in this case did not involve "100 kilograms or more." The indictment made no mention of quantity. Therefore, Congress requires that he be sentenced under subsection (D), which, as we have pointed out, has no mandatory minimum sentence based on quantity, just a range of zero to five years. Here we note that the district court calculated pursuant to the Guidelines that Velasco–Heredia's sentencing range was only thirty-seven to forty-six months, far less than the

sixty-month sentence imposed under subsection (B). Thus, not only was the error not harmless, it was demonstrably harmful to this defendant.

Congress has provided no mandatory minimum based on quantity for a violation involving 0–50 kilograms, only for a violation involving one hundred kilograms or more. To adopt the government's argument would require a manipulation of the sentencing scheme established by Congress in a manner that would have the effect of rewriting the law to establish under certain circumstances a mandatory maximum for subsection (D). Thus, the government's argument that it does not matter that the five-year mandatory minimum is in subsection (B) fails because it distorts the intent by Congress and creates a link where there is not one. It is too clever by half to permit the government in the guilt phase of a case to prove beyond a reasonable doubt that only one kilogram of marijuana was involved in the offense, and then at sentencing to prove 101 kilograms by a preponderance of the evidence and claim that such a finding trumps the Guidelines and requires the maximum sentence of five years. Congress has clearly said, as we read these statutes, that a five-year minimum sentence is available *only* in cases involving amounts in excess of 100 kilograms. In summary, the law does not provide a mandatory five-year sentence for persons convicted of subsection (D), period. *Harris* and U.S.S.G. § 5G1.1(b), therefore are inapposite.

Accordingly, Velasco–Heredia must be resentenced pursuant to § 841(b)(1)(D), not subsection (B). We recognize that due to intervening changes in the law, the government has, by no fault of its own, lost its opportunity to prove beyond a reasonable doubt that Velasco–Heredia was responsible for more than 100 kilograms; but the

Fifth Amendment to our Constitution does not permit Velasco–Heredia to be tried twice for the same offense. So be it. His conviction of a conspiracy for an unspecified amount of marijuana stands, but his sentence is ordered vacated, and he shall be sentenced accordingly under § 841(b)(1)(D). Given our holding, the issue of the length of his supervised release is moot.

Conviction AFFIRMED, sentence VACATED and REMANDED for resentencing.